# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 3:17-CR-136–HEH |
| CORNELIUS JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
### (Affirming Defendant's Conviction for Simple Assault)

This matter is before the Court on appeal from the magistrate judge. Defendant

Cornelius Johnson ("Defendant") was charged in a single-count Criminal Information

alleging that he committed a simple assault within the special territorial jurisdiction of the

United States, in violation of 18 U.S.C. § 113(a)(5).[1] On August 3, 2017, Defendant was

convicted of the charged offense after a one-day bench trial and remanded to custody.

On October 17, 2017, Defendant was released from custody after being sentenced to time

served and ordered to pay a $500 fine. Defendant filed Notice of Appeal on October 25,

2017, and subsequently all parties filed memoranda supporting their respective positions.

Defendant's appeal challenged the sufficiency of the evidence with regard to both

the substantive elements of simple assault and the jurisdictional element—that the assault

occurred within the special maritime and territorial jurisdiction of the United States.

---

[1] 18 U.S.C. § 113(a)(5) provides: "Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: Simple assault, by a fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of 16 years, by fine under this title or imprisonment for not more than 1 year, or both."

After a hearing in open court on January 31, 2018, this Court affirmed

Defendant's conviction for simple assault. This Court announced its reasoning as to the

sufficiency of the evidence to convict Defendant for simple assault from the bench, while

reserving its reasoning with regard to the jurisdictional issue for a more thorough

articulation in a published opinion.

For the reasons that follow, the Court finds that the United States District Court

for the Eastern District of Virginia has jurisdiction over the underlying crime in this case.

## I. STANDARD OF REVIEW

The scope of an appeal to this Court from the magistrate court is the same as an

appeal to the Court of Appeals from a judgment entered by the district court. *See* Fed. R.

Crim. P. 58(g)(2)(D). Accordingly, when a defendant challenges the sufficiency of the

evidence, the district court must view the evidence in the light most favorable to the

government. *United States v. Bursey*, 416 F.3d 301, 306 (4th Cir. 2005). The magistrate

judge's conclusions of law are reviewed de novo, and his findings of fact are reviewed

for clear error. *United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005).

## II. ANALYSIS

The record adduced at trial clearly shows that the assault occurred at McGuire VA

Medical Center ("MVMC"), which is a federal facility located within the Eastern District

of Virginia. Defendant does not contest the fact that the assault occurred at this location,

but instead challenges the sufficiency of the evidence produced at trial to support this

Court's territorial jurisdiction over MVMC. The Government counters that federal

jurisdiction over MVMC is commonly known and that the Court can properly take judicial notice of such jurisdiction on appeal.

## A. Review of the Jurisdictional Element on Appeal

"It is well established that a court may determine, as a matter of law, 'the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact.'" *United States v. Bridges*, No. 94-5130, 1994 U.S. App. LEXIS 34616, at *3 (4th Cir. Dec. 9, 1994) (unpublished opinion) (quoting *United States v. Warren*, 984 F.2d 325, 327 (9th Cir. 1993)); *see United States v. Davis*, 726 F.3d 357, 368 (2d Cir. 2013); *Bryant v. Taylor*, 797 F. Supp. 456, 461 n. 3 (D. Md. 1992) (collecting cases); *see also United States v. Beyle*, 782 F.3d 159, 166 (4th Cir. 2015) (holding that whether a specific physical location constitutes "on the high seas," and therefore within the special maritime and territorial jurisdiction of the United States, is a question of law). Defendant, however, contends that the Supreme Court's recent decision in *Torres v. Lynch*, 136 S. Ct. 1619 (2016), mandates that the entire jurisdictional element be decided by the trier of fact and subject to proof beyond a reasonable doubt. The Court disagrees.

In *Torres*, the Supreme Court determined that a state offense qualified as an "aggravated felony" within the meaning of § 1101(a)(43) of the Immigration and Nationality Act because it included all the elements of the federal statute except the interstate commerce element. *Id.* While differentiating between substantive and jurisdictional elements of an offense, the Court noted the similarity that "[b]oth kinds of elements must be proved to a jury beyond a reasonable doubt; and because that is so, both

3

play a real role in a criminal case." *Id.* at 1630. Defendant seizes on this single sentence and concludes that it requires that both the physical location where a crime occurred as well as the court's jurisdiction over that location be proved beyond a reasonable doubt.[2]

Even with the most favorable of constructions, *Torres* cannot be read to uproot the deeply entrenched distinction between law and fact,[3] and a search of its progeny yields no cases that apply *Torres* in this fashion. Defendant's position would require this Court to disregard Fourth Circuit precedent, as well as persuasive authority from sister circuits, and require the trier of fact to determine the validity of the United States' title in every case involving federal maritime and territorial jurisdiction. Entrusting such a nuanced and cumbersome legal exercise to the trier of fact would leave open the distinct possibility of conflicting decisions as to federal jurisdiction over an identical parcel of property—a status which by its nature either exists or doesn't exist. The Court is unwilling to adopt such an unorthodox view of the law based upon a narrow construction of a single sentence that is not central to the holding of an otherwise unrelated Supreme Court decision.

---

[2] The factual question of where the underlying assault occurred is not at issue. Therefore, the Court need not address whether *Torres* can reasonably be interpreted as changing the burden of proof required for the factual basis of jurisdiction or whether it merely restates the well-established requirement of proof applied in the Fourth Circuit. *See, e.g., United States v. Koegel*, 777 F. Supp. 2d 1014, 1019 (E.D. Va. 2011) ("[T]he Government had to prove at trial beyond a reasonable doubt that . . . the incident occurred in the special maritime and territorial jurisdiction of the United States."); *Higgs v. United States*, 711 F. Supp. 2d 479, 549–50 (D. Md. 2010) (approving of the trial court's instruction to the jury that "the Government must prove beyond a reasonable doubt [] that the killing took place within the maritime and territorial jurisdiction of the United States").

[3] *See Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S. Ct. 296, 301 (1935) ("The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts."); Black's Law Dictionary 1366 (9th ed. 2009) (defining "question of fact" and "question of law").

The magistrate judge's decision was not deficient with regard to the jurisdictional element. Federal Rule of Criminal Procedure 23(c) provides for "specific findings of fact" upon request but contains no similar requirement as to conclusions of law. *Cf.* Fed. R. Civ. P. 52(a)(1) (explaining the treatment required of both findings of fact and conclusions of law in a civil bench trial). The testimony credited by the magistrate judge clearly established the physical location of the assault—a fact which the Defendant does not contest. The determination of whether this specific location falls within federal jurisdiction is a question of law. The magistrate judge found that Defendant was guilty beyond a reasonable doubt of simple assault in violation of 18 U.S.C. § 113(a)(5), and an element of that crime is that the assault occurred within the special maritime and territorial jurisdiction of the United States. Therefore, the conclusion that MVMC is within the special maritime and territorial jurisdiction of the United States is implicit in the magistrate judge's finding that Defendant was guilty of simple assault. Such a conclusion is entitled to de novo review.

Alternatively, even if the magistrate judge's findings were deficient, the Court may take judicial notice of MVMC's jurisdictional status on appeal. *See United States v. Lavender*, 602 F.2d 639, 641 (4th Cir. 1979). In *Lavender*, the court found that it could appropriately take judicial notice that the Blue Ridge Parkway was within the special maritime and territorial jurisdiction of the United States after the trial record made clear that the underlying crimes occurred on the parkway. *Id.* Just as in *Lavender*, there is no dispute in this case over where the crime factually occurred. Moreover, federal jurisdiction over MVMC is "fixed [and] does not change from case to case," *United*

*States v. Gavegnano*, 305 F. App'x 954, 956–57 (4th Cir. 2009) (unpublished opinion),

and therefore is not susceptible to being "trumped by the fact finding apparatus of a

single court." *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995),

*judgment vacated on other grounds*, 517 U.S. 1206 (1996), *readopted*, 101 F.3d 325 (4th

Cir. 1996). Thus, federal jurisdiction over MVMC is a legislative fact not subject to the

strictures of Federal Rule of Evidence 201.[4] *See United States v. Davis*, 726 F.3d 357,

367 (2d Cir. 2013) (taking judicial notice on appeal of the legislative fact of federal

jurisdiction over a federal prison).

Defendant does not appear to contest that *Lavender* enables the Court to take

judicial notice of federal jurisdiction over MVMC at this stage of the case. Instead, he

relies on *Torres* to elevate both the factual and legal bases of jurisdiction to essential

elements of the underlying offense. Consequently, Defendant argues that judicial notice

of the jurisdictional element is unavailable because it is inappropriate to "take judicial

notice on appeal of an unproven essential element of a criminal offense." *United States

v. Hawkins*, 76 F.3d 545, 551 (4th Cir. 1996) (quoting *United States v. Burroughs*, 564

F.2d 1111, 1116 n.7 (4th Cir. 1977), *overruled in part on other grounds*, *United States v.

Steed*, 674 F.2d 284, 285 n.2 (4th Cir.) (en banc), *cert. denied*, 459 U.S. 829 (1982)).[5]

---

[4] However, Federal Rule of Evidence 201 would not impede judicial notice in this case. Any limitation
that could be gleaned from subdivision (f)'s guidance with regard to instructing the jury is by its terms
inapplicable in this case, which proceeded as a bench trial. *See Government of Canal Zone v. Burjan*, 596
F.2d 690, 694 (5th Cir. 1979).

[5] To the extent Defendant argues *Hawkins* controls this case, the Court disagrees. The judicial notice
contemplated in both *Hawkins* and *Burroughs* involved facts specific to the case and not a fixed legal
status. Moreover, since first noting the impropriety of taking judicial notice of an essential element on
appeal in *Burroughs*, the Fourth Circuit has identified jurisdiction as an essential element while

Because *Torres* is inapplicable to the immediate case, the Court finds that *Lavender* controls the issue of judicial notice.[6] Moreover, judicial notice is not only available but prudent given the aforementioned potential for conflicting decisions.

For these reasons, MVMC's status as within the special maritime and territorial jurisdiction of the United States is appropriately before the Court.

## B. Federal Jurisdiction over McGuire VA Medical Center

The jurisdictional element of the present offense is satisfied because federal jurisdiction over MVMC is an established and commonly known fact in the Eastern District of Virginia. *See Lavender*, 602 F.2d at 641; *see also Schoppel v. United States*, 270 F.2d 413, 418 (4th Cir. 1959) (noting that the Government is not required to "try title in a murder case" (citing *Holt v. United States*, 218 U.S. 245, 252 (1910)). The United States District Court for the Eastern District of Virginia has long exercised jurisdiction over crimes occurring at MVMC and does so with regularity. The Government's closing arguments at trial reflected the well-known nature of federal jurisdiction over MVMC. (Tr. 59–58, ECF No. 37-1 ("[MVMC] is located in Richmond, Virginia, which is within the Eastern District of Virginia. And as Your Honor is of course aware, is within the special territorial jurisdiction of this Court.").) Moreover, the Court's public website identifies that MVMC falls within the Court's jurisdiction.[7]

---

reaffirming its ability to take judicial notice of the legal basis of jurisdiction on appeal. *See United States v. Tisdale*, No. 92-5431, 1993 U.S. App. Lexis 23892, at *4–5, *5 n.2 (4th Cir. 1993).

[6] Additionally, judicial notice of this question of law does not implicate the Constitutional provisions cited by Defendant.

[7] http://www.vaed.uscourts.gov/resources/Traffic/index.html

However, in the interest of putting any questions over this long-existing legal

relationship to rest, the Court will recount with particularity how the United States

attained the concurrent jurisdiction over MVMC that it holds today.

The relevant definition of "special maritime and territorial jurisdiction of the

United States" is found in 18 U.S.C. § 7(3), which provides in pertinent part: "[a]ny

lands reserved or acquired for the use of the United States, and under the exclusive or

concurrent jurisdiction thereof." In turn, 40 U.S.C. § 3112 details the requirements for

the United States to obtain such jurisdiction. Specifically, § 3112(b) states that the heads

of departments or other authorized officers can accept and acquire concurrent jurisdiction

over federal properties like MVMC on behalf of the United States by "filing a notice of

acceptance with the Governor of the State or in another manner prescribed by the laws of

the State where the land is situated." 40 U.S.C. § 3112(b).

Unless the Government satisfies one of these methods of accepting jurisdiction,

§ 3112(c) dictates a conclusive presumption against federal jurisdiction. This

presumption is only applicable to properties acquired by the federal government after

1940. *Markham v. United States*, 215 F.2d 56, 58 (4th Cir. 1954). For properties

acquired before 1940, there is a presumption in favor of federal jurisdiction. *See Chalk v.

United States*, 114 F.2d 207, 209 (4th Cir. 1940) (citing *Silas Mason Co. v. Tax Com. of

Wash.*, 302 U.S. 186 (1937)).

Concurrent jurisdiction over MVMC was acquired and accepted through a deed of

cessation ("Deed") filed in the Clerk's Office of the Circuit Court of Chesterfield County,

Virginia on April 15, 1947, in accordance with Section 19c, Chapter 422, of the Code of

Virginia of 1940.[8]  Section 19c, passed as an emergency measure just two months after

Congress added the presumption against acceptance of jurisdiction, delineates an

alternative manner of acceptance of jurisdiction under the laws of Virginia.  Governor

William M. Tuck and Attorney General Abram P. Staples, of the Commonwealth of

Virginia, and General Omar N. Bradley executed the Deed, which identifies Section 19c

as the source of authority for the cessation of jurisdiction.

> Section 19c(1) states in relevant part:
>
> [T]here is hereby ceded to the United States concurrent jurisdiction over crimes
> and offenses committed on lands acquired since March twenty-eighth, nineteen
> hundred and thirty-six, and hereafter acquired by the United States in Virginia by
> purchase, lease, condemnation, or otherwise, for sites for custom houses, court
> houses, arsenals, forts, naval bases, military or naval airports, or airplane landing
> fields, veterans hospitals, or for any military or naval purpose, and there is hereby
> ceded to the United States such additional jurisdiction and powers over lands
> acquired by the United States in Virginia by purchase or condemnation as
> hereinafter provided.

1940 Va. Acts 761.

Section 19c(2) provides that when a department head or authorized officer of the

federal government and the Governor and Attorney General of the Commonwealth of

Virginia are in agreement that additional jurisdiction should be ceded to the United

States, the Governor and Attorney General should execute and acknowledge a deed under

the seal of the Commonwealth that describes both the jurisdiction to be ceded and the

land over which said jurisdiction is to be ceded.  1940 Va. Acts 761.  Section 19c(4)

explains that acceptance is necessary before the deed becomes effective, in line with the

requirements of federal law, and announces that the federal official "shall indicate such

---

[8] The deed of cessation is found in Deed Book 308, at pp. 63–66.  A copy is appended to this Opinion.

acceptance by executing and acknowledging said deed, and admitting same to record in the office of the clerk of the court in which deeds conveying the lands affected would properly be record." 1940 Va. Acts 761. Section 19c(5) then concludes that once the above provisions are complied with the deed "shall have the effect of ceding to and vesting in the United States the jurisdiction and powers therein provided for and none others." 1940 Va. Acts 761–62.

At the outset, the Court notes that it is ambiguous from the plain text of Section 19c whether the term "additional jurisdiction," for which that section provides a manner of acceptance, includes the concurrent jurisdiction ceded in Section 19c(1). The Court's research yields no cases specifically addressing this issue. However, given the placement of the cessation of concurrent jurisdiction language in the context of the broader code and the plain text of the Deed executed by both Governor and the Attorney General of Virginia, the Court believes a fair interpretation of Section 19c supports the use of that section as an alternative manner for the United States to accept the concurrent jurisdiction therein described.

Section 19c was assimilated into the Code of Virginia of 1942 as Section 19e, which is titled "Ceding additional jurisdiction to the United States over certain lands acquired in Virginia." Va. Code § 19e (1942). As seen above, Section 19e(1) cedes "concurrent jurisdiction over crimes and offenses committed on lands acquired since [March 28, 1936]." Va. Code § 19e(1) (1942). The inclusion of a cessation of concurrent jurisdiction in a section devoted to ceding additional jurisdiction necessarily implies that the former is included in the latter. Moreover, a contrary reading would

10

render a significant portion of Section 19e(1) superfluous to Section 19, which is titled "ceding to the United States concurrent jurisdiction over certain lands within the state and authorizing the acquisition thereof." Va. Code § 19e (1942). Lastly, this understanding of Section 19e is confirmed by text of the Deed, which was executed by the Attorney General of Virginia—a Constitutional officer with the statutory authority to render opinions on the laws of the Commonwealth.

The Deed makes clear that the Governor and Attorney General of the Commonwealth ceded jurisdiction "pursuant to the authority conferred upon them by Section 19c of the Code of Virginia," and it systematically lays out how the statutory requirements for cessation were complied with. (Deed 2.) The United States acquired the lands upon which MVMC sits after March 28, 1936. (*Id.* at 1.) General Omar N. Bradley, who served as the Administrator of Veteran's Affairs, requested the cessation contemplated by the Deed, and Governor William M. Tuck and Attorney General Abram P. Staples agreed that the cessation should be granted. (*Id.*)

The Deed identifies the jurisdiction to be ceded as "concurrent jurisdiction over crimes and offenses committed" and contains a detailed description of the land over which said jurisdiction was to be ceded. (*Id.* at 1–2.) The Governor and Attorney General executed the Deed under the seal of the Commonwealth and signed it on March 20, 1947. (*Id.* at 2–3.) General Bradley then accepted jurisdiction by executing and acknowledging the Deed through his signature on March 28, 1947, and said jurisdiction vested when the Deed was admitted to record of the Clerk's Office of the Circuit Court of Chesterfield County on April 15, 1947. (*Id.* at 4.)

11

From the foregoing, it is clear that the Commonwealth intended to cede concurrent jurisdiction to the United States and the United States intended to accept such jurisdiction. Both parties executed the Deed with the purpose and effect of complying with the state's statutory procedures for cessation. For these reasons, the Court finds that concurrent jurisdiction over MVMC was ceded on April 15, 1947, and the United States continues to hold such jurisdiction today.

## III. CONCLUSION

Having determined that the legal question of federal jurisdiction over MVMC is appropriately before the Court at this stage of the case, the Court finds that federal concurrent jurisdiction exists over MVMC. It is common knowledge within the Eastern District of Virginia that MVMC falls within the special maritime and territorial jurisdiction of the United States. Moreover, the Deed confirms that the United States has held concurrent jurisdiction over MVMC since April 15, 1947.

For these reasons and those announced in open court on January 31, 2018, the Court affirmed Defendant's conviction.

An appropriate Order will accompany this Memorandum Opinion.

                                                       /s/
                                            Henry E. Hudson
                                            United States District Judge

Date: Feb. 22, 2018
Richmond, VA

VIRGINIA:

In the Clerk's Office of the Circuit Court of Chesterfield County, the ____ day of ____ 1947, this Deed was presented and with the Certificate , admitted to record 11:30 o'clock A. M.

Teste:

_____ Clerk

[faded reversed text from facing page]

KNOW ALL MEN BY THESE PRESENTS, THAT WHEREAS, the United States has acquired and now holds the hereinafter described lands or interest in lands within the limits of the Commonwealth of Virginia for use in connection with the McGuire General Hospital, same being the veterans hospital, at or near Richmond, Virginia, and the United States desires the additional jurisdiction and powers referred to in section 19e(1) of the Code, as enacted by Chapter 422 of the Acts of the General Assembly of 1940, which consist of concurrent jurisdiction over crimes and offenses committed on lands acquired since March 28, 1936; and,

WHEREAS, Omar N. Bradley, General of the United States Army, the Administrator of Veterans Affairs, being the head of the agency of the government of the United States having immediate jurisdiction, custody, and control, over said lands, has requested that said additional jurisdiction be ceded to the United States as provided in said section 19e of the Code, and William M. Tuck, Governor of Virginia, and Abram P. Staples, Attorney General of Virginia, agree that additional jurisdiction should be granted;

NOW, THEREFORE, we, William M. Tuck and Abram P. Staples, as Governor and Attorney General, respectively, of the Commonwealth of Virginia, in the name of and on behalf of the Commonwealth of Virginia, and in accordance with the provisions of said section 19e, do hereby cede unto the United States of America concurrent jurisdiction over crimes and offenses committed on the hereinafter described lands, said lands having been acquired by the United States since March 28, 1936, and which said lands are located in the City of Richmond and in Chesterfield County, Virginia, and are more particularly described as follows:

TRACTS NOS. 1, 2, 3, 8 and 9.

Beginning at the intersection of the center line of Maury Street with the center line of 42nd Street in the City of Richmond, Virginia; thence S. 24° 28' W. 1302.50 feet to a point in the Easterly boundary line of the hereinafter described parcel of land, said point

being the TRUE point of beginning; thence S. 52° 46' E.
20.7 feet to a point; thence S. 52° 33' E. 1575.70 feet
to a point in the Westerly R/W line of Hopkins Road;
thence along the Westerly R/W line of said road the
following courses and distances: S. 33° 41' W. 407.65
feet to a point, S. 20° 05' W. 1147.88 feet to a point,
S. 19° 56' W. 777.03 feet to a point; thence leaving
said road along a line S. 88° 10' W. 1244.47 feet to a
point in the Easterly R/W line of Belt Boulevard; thence
along the Easterly R/W line of Belt Boulevard and Broad
Rock Road the following courses and distances: N. 28°
36' W. 127.27 feet to a point of curve; thence along
the arc of a curve to the left with a radius of 1775.36
feet a distance of 203.22 feet to a point; thence N.
35° 10' W. 813.40 feet to a point of curve; thence
along the arc of a curve to the right with a radius of
67.08 feet a distance of 61.43 feet to a point; thence
N. 17° 18' E. 524.52 feet to a point of curve; thence
along the arc of a curve to the left with a radius of
1353.34 feet a distance of 419.65 feet to a point;
thence N. 0° 28' W. 189.62 feet to a point of curve;
thence along the arc of a curve to the left with a
radius of 658.68 feet a distance of 250.90 feet to a
point; thence N. 22° 17' W. 144.43 feet to a point of
curve; thence along the arc of a curve to the right
with a radius of 640.69 feet a distance of 408.20 feet
to a point; thence N. 14° 13' E. 169.15 feet to a point
of curve; thence along the arc of a curve to the right
with a radius of 581.44 feet a distance of 116.57 feet
to a point; thence N. 25° 42' E. 520.81 feet to a
point; thence leaving Broad Rock Road along a line S.
58° 48' E. 140.0 feet to a point; thence N. 25° 40'
E. 70.0 feet to a point; thence N. 24° 52' E. 74.95
feet to a point; thence N. 32° 14' E. 65.17 feet to
a point; thence N. 31° 53' E. 60.0 feet to a point;
thence N. 54° 07' W. 145.0 feet to a point in the
Easterly R/W line of Broad Rock Road; thence along
the Easterly R/W line of said road, N. 31° 53' E.
20.07 feet to a point; thence leaving said road along
a line S. 52° 46' E. 1224.03 feet to the TRUE point
of beginning, containing 158.272 acres, more or less.

TRACT NO. 4

Beginning at the intersection of the Westerly
R/W line of Broad Rock Road and the Easterly R/W line
of the Atlantic Coast Line Railroad; thence Northwesterly
along the Easterly R/W line of said railroad a dis-
tance of 665 feet, more or less, to a point; thence
Southeasterly along the arc of a curve to the right
with a radius of 691.78 feet a distance of 505.0
feet to a point in the Westerly R/W line of Broad Rock
Road; thence along the Westerly R/W line of said road,
S. 17° 18' W. 422.0 feet, to the point of beginning,
containing 2.05 acres, more or less.

CONTAINING IN ALL ONE HUNDRED SIXTY AND THREE
HUNDRED TWENTY-TWO THOUSANDTHS (160.322) ACRES OF LAND,
MORE OR LESS.

IN TESTIMONY WHEREOF, pursuant to the authority conferred
upon them by section 19c of the Code of Virginia, William M. Tuck,

Governor of the Commonwealth of Virginia, and Abram P. Staples,
Attorney General of said Commonwealth, have hereunto set their
hands and caused the lesser seal of the Commonwealth of Virginia
to be affixed.hereunto and attested by the Secretary of the Com-
monwealth, this _____20ᵗʰ_____ day of __March__, 1947.

_William M. Tuck_
Governor of Virginia

_Abram P. Staples_
Attorney General of Virginia

ATTEST:

_M. W. Armistead_
Secretary of Commonwealth

COMMONWEALTH OF VIRGINIA }
                          } TO-WIT
CITY OF RICHMOND          }

I, _Margaret Cofer_, a Notary Public
in and for the City of Richmond, in the Commonwealth of Virginia,
do hereby certify that William M. Tuck and Abram P. Staples, whose
names are signed to the foregoing writing bearing date on the
_____20ᵗʰ_____ day of __March__, 1947, as Governor and
Attorney General, respectively, of the Commonwealth of Virginia,
have acknowledged the same before me in my city aforesaid.

Given under my hand this _20ᵗʰ_ day of __March__,
1947.

_Margaret Cofer_
Notary Public

My commission expires_ 6-30-48 _.

- 3 -

Pursuant to and in accordance with the provisions of section 355 of the Revised Statutes of the United States, as amended, Omar N. Bradley, General of the United States Army, the Administrator of Veterans Affairs, on behalf of the United States of America, does hereby accept the jurisdiction hereinabove ceded to the United States as is evidenced by his execution and acknowledgment of this instrument.

IN TESTIMONY WHEREOF, the said Omar N. Bradley, General of the United States, the Administrator of Veterans Affairs pursuant to authority conferred by section 355 of the Revised Statutes of the United States, as amended, has hereunto set his hand and the seal of the Veterans' Administration, this 28ᵗʰ day of March , 1947.

_Omar N. Bradley_
Administrator of Veterans Affairs.

(SEAL)

UNITED STATES OF AMERICA)
                        } ss
DISTRICT OF COLUMBIA    )

I, Fred S. Britton , a Notary Public in and for the District of Columbia, do hereby certify that Omar N. Bradley whose name is signed to the foregoing writing bearing date on the 28ᵗʰ day of March , 1947, as Administrator of Veterans Affairs, has acknowledged the same before me in my District aforesaid.

GIVEN under my hand this 28ᵗʰ day of March , 1

_Fred S. Britton_
Notary Public

My commission expires May 14, 1951.

VIRGINIA:
In the Clerk's Office of the Circuit Court of Chesterfield County, the 15ᵗʰ day of April 1947, this Deed was presented and with the Certificate , admitted to record at o'clock, A. M.
11:45 Teste:
_Walter N. Perdue_ Clerk.